

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-1022

PARRISH DARE

APPELLANT

V.

SCOTT FROST

APPELLEE

Opinion Delivered: May 17, 2017

APPEAL FROM THE SALINE
COUNTY CIRCUIT COURT
[NO. 63DR-16-211]

HONORABLE BOBBY
MCCALLISTER, JUDGE

AFFIRMED IN PART; REVERSED
AND REMANDED IN PART

## MIKE MURPHY, Judge

Parrish Dare appeals the August 15, 2016 Saline County circuit court order calculating child support and finding a material change in circumstances sufficient to warrant a modification of visitation. We affirm in part and reverse and remand in part.

Scott Frost and Parrish Dare had a child together when they lived in Virginia. They were never married. When Dare wanted to move to Arkansas, the parties agreed to an order giving Dare primary physical custody and giving Frost "liberal visitation." It set a visitation schedule alternating holidays and giving Frost two weeks each summer with the minor child. Child support was set at $400 a month. Despite the two weeks of visitation ordered each summer, Frost typically got closer to three or four weeks, by agreement with Dare.

Sometime early in 2015, Dare began asking for more support from Frost (who was actually paying $425 a month) but he declined to pay more. Around the same time, she

stopped permitting visitation other than what was specifically contemplated in the agreed order.

Frost registered the Virginia order in Saline County and moved to modify the order to include more visitation, alleging a material change in circumstances. Dare counterclaimed asking for more child support. A hearing was held on the visitation issue; Dare and Frost were the only witnesses. The court found a material change had occurred so as to warrant a modification in the visitation schedule. A separate hearing was held on the issue of child support to allow the parties to argue why Frost's capital gains and stock portfolio should or should not be included in any child-support calculations. After consideration, the court concluded that Frost's investment accounts were similar to retirement accounts or ownership of real property and that they may be included in the calculation of child support if Frost were to receive any disbursements, but not until then. The court found Frost's average net biweekly income to be $1174[1] and calculated the child-support obligation under Administrative Order No. 10.

Dare now appeals, arguing that the circuit court erred when it (1) found a material change in circumstances sufficient to modify visitation and (2) declined to include Frost's investment accounts in its calculation of his child-support obligation.

## I. *Material Change*

Visitation is always modifiable; however, courts require more rigid standards for modification than for initial determinations to promote stability and continuity for the

---

[1]On review, we could not discern how the court arrived at this figure, but because we are remanding the case to recalculate the child-support obligation, we mention it here only in passing.

children and in order to discourage repeated litigation of the same issues. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005) (citing *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003)). The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation. *Id*. The best interest of the child is the main consideration, *id*., but whether a material change of circumstances has occurred is a threshold issue. *Baker v. Murray*, 2014 Ark. App. 243, at 7, 434 S.W.3d 409, 415. In child-custody matters, we perform a de novo review, but we will not reverse the trial court's findings unless they are clearly erroneous. *Hoover v. Hoover*, 2016 Ark. App. 322, at 2–3, 498 S.W.3d 297, 299.

In its order, the circuit court found that Dare "had exposed the minor child to inappropriate circumstances and has been negative toward [Frost] sufficiently to cause strain between the minor child and [Frost]." Dare contends that no material change occurred to warrant a modification of visitation.

We have held that an elevated degree of discord between parties can amount to a material change in circumstances. *Id*. The testimony from both parties established that they had previously been able to agree on extended summer visitations, but at trial, Dare had indicated that she did "not see a reason to do anything outside of the visitation guidelines if he isn't going to do anything outside of the support guidelines." The evidence further established that Dare had shown the minor child the court pleadings from this case and some of the emails between her and Frost. On one occasion, she sent the minor child to Virginia for visitation with her father with an empty suitcase as an admitted act of "gamesmanship" designed to send a "message" to Frost. Given this evidence, it was appropriate to modify

the visitation schedule to more closely reflect the actual conduct of the parties before the relationship devolved, and we affirm on this point.

## II. *Child Support*

For her second point on appeal, Dare contends the circuit court erred when it opted to not consider the growth of Frost's stock portfolio in its calculation of child support or imputing his income. We agree with Dare's position as to the stock portfolio.

The appropriate method for determining the support due is by reference to the family support chart in Arkansas Supreme Court Administrative Order No. 10. Ark. Code Ann. § 9-12-312(a)(3)(A); *Davis v. Bland*, 367 Ark. 210, 238 S.W.3d 924 (2006). It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Id.* If the court deviates from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interest of the child, the chart amount is unjust or inappropriate. Ark. Sup. Ct. Admin. Order No. 10 § (I). The amount of child support due is a factual question. "As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion." *Hall v. Hall*, 2013 Ark. 330, at 4, 429 S.W.3d 219, 222, *reh'g denied* (Oct. 31, 2013).

At trial, the evidence established that Frost had about $40,000 invested in a stock portfolio at Wells Fargo. His tax returns indicated a net profit of $5470 from that portfolio in 2014, and $1454 in 2015. In its order, the court reasoned that it shouldn't have to "engage in the cumbersome annual review in the fluctuations in value of certain types of property" and that Frost's investment account was similar to a retirement account or ownership of real

property, and the growth from that account should be used in the calculation of child support only when the "growth is actually 'realized' by the owner."

In *White v. White*, citing the federal tax code, our supreme court held that a gain from the sale or exchange of property, when realized, constitutes "profit" and is regarded as "income" that is taxable during such period when it is realized. 95 Ark. App. 274, 282–83, 236 S.W.3d 540, 546–47 (2006). The test for realization is straightforward: to realize a gain or loss in the value of property, the taxpayer must engage in a "sale or other disposition of [the] property." *Id.* (citing 26 U.S.C. 1001(a)). Frost's tax returns indicate he bought and sold stocks in 2014 and 2015 and realized gains from those sales. Choosing to reinvest the profits into other stock purchases does not preclude one from having to pay taxes on it and should not preclude it from being considered when calculating child support. We therefore remand with instructions to consider the realized gains as income, but leave it to the circuit court's discretion on how to best do so.

Dare next argues that the circuit court erred in not imputing Frost's income commensurate with his lifestyle. Administrative Order No. 10 provides the following guidance on imputing income:

> **Imputed Income**. If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

Here, the testimony established that Frost is a behavioral-specialist counselor for at-risk middle schoolers and makes $1071 semimonthly. He testified that his wife's income fluctuates, but her work and savings do contribute toward paying their monthly expenses.

Frost has some money in savings and, as previously discussed, a modest stock portfolio. Dare does not direct our attention to any evidence that indicates Frost is "unemployed or working below full earning capacity," and we find no error in the circuit court's decision to not impute Frost's income.

Affirmed in part; reversed and remanded in part.

ABRAMSON and HIXSON, JJ., agree.

*The Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellant.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellee.