Cite as 2024 Ark. App. 265

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-315

| | | |
|---|---|---|
| ADAM WHITE | | Opinion Delivered April 17, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 04DR-20-595] |
| MEGAN MERRIGAN | | |
| | | HONORABLE XOLLIE DUNCAN, |
| | APPELLEE | JUDGE |
| | | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Adam White appeals from the Benton County Circuit Court's order dismissing his motion for modification of support and alimony. On appeal, White argues the court erred in failing to modify both obligations because his income decreased and there was no longer a need. We affirm.

White and appellee Megan Merrigan married in January 2010 and divorced in May 2020. They share joint custody of their two minor children. Their property settlement agreement established both child support and alimony. It was approved by the court and incorporated into the decree.

At the time of the divorce, White was a partner at Northwest Anesthesiology. Merrigan was employed as a nurse practitioner at Arkansas Children's Hospital. White's

annual income for 2019 was approximately $428,000; that same year Merrigan earned approximately $106,506. For child support, the parties agreed: "After comparing what each would pay the other under the chart, they split the difference and determined that Adam White shall pay child support to Megan Merrigan in the amount of $1,211.70 bi-weekly." White additionally agreed to pay $74 biweekly to Merrigan for health and dental insurance for the children. White and Merrigan agreed to share equally in extra expenses like child care, extracurricular activities, and educational activities. They also agreed to equally split deductibles, copays, and extra medical expenses for the children. Each parent could claim one child as a deduction on taxes. Additionally, White agreed to pay Merrigan's car payment of $500 a month. White also agreed to pay Merrigan $500 biweekly in alimony until December 31, 2027. The agreement states that "alimony is modifiable based on a change of circumstances by either party" and ceases in seven years.

In February 2022, White filed a petition to modify child support and alimony. The petition stated that since the entry of the decree, there had been a material change in circumstances in that White experienced an approximate 30 percent decrease in income. The petition also alleged that Merrigan had a material increase in income. White asserted that due to this material change, the court should recalculate the appropriate support.

A hearing on the petition was held January 26, 2023, and the evidence and testimony established the following. White had changed jobs from Northwest Anesthesiology Associates to another clinic where he worked locum tenens coverage. He most recently rejoined an anesthesiology group as a partner making about $25,000 a month. White was

2

making $35,000 a month at the time of the property settlement agreement. He claimed he experienced a $95,000 decrease in income since 2019. At the time of the hearing, he had not prepared his 2023 taxes. White was working about two and a half weeks a month, totaling about one hundred hours. During the marriage, White would work sixty to seventy hours a week.

Merrigan testified that she understood "change of circumstances" in the agreement to mean "unemployment." Merrigan introduced a 2020 paystub reflecting annual income of $110,250. She also introduced a 2022 paystub reflecting an annual income of $116,932. She testified she continues to have the same or greater expenses she had in 2020.

Following testimony, the court ordered the parties to submit what they believe is the appropriate child-support worksheet to aid in determining what child support should be going forward. Concerning alimony, the court stated that it would take the issue under advisement.

On February 9, the court entered its order. In dismissing White's motion, the court found that while there had been a change in circumstances since the entry of the last order, the change was not so substantial as to justify a modification of child support. Additionally, the order stated:

> The Court does not find that the Plaintiff has become intentionally underemployed only because the Court does not want to force the Plaintiff into a situation where he has to relocate or obtain a job so geographically distant that it will interfere with his time with the children. However, based upon the evidence, I find it is very possible the Plaintiff could, if he wished to do so, enhance his income during times he does not have physical control of the children. His choice is to not pursue

that option, and while the Court does not fault him for that decision, it also does not find from the totality of the evidence that a reduction of child support is in order.

Concerning spousal support, the court found that White is able to pay at the rate in the previous order and that Merrigan still has a need for that support to maintain the accustomed lifestyle for herself and the children while they are in her custody. White appealed.

I. *Child Support*

White first argues that the court erred in failing to modify his child-support obligation when his income had decreased and where Merrigan admitted she did not need the amount of support she was receiving.

Child-support cases are reviewed de novo on the record. *Troutman v. Troutman*, 2017 Ark. 139, 516 S.W.3d 733. A circuit court's finding of fact will not be reversed unless it is clearly erroneous. *Id.* Due deference is given to the circuit court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony, but no deference is given to a circuit court's conclusion of law. *Id.*

A change in circumstances must be shown before there can be a modification of child support; the party seeking modification has the burden of showing a change of circumstances has occurred. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. Arkansas Code Annotated section 9-14-107(a)(1) dictates that a change in the payor's gross income in an amount equal to or more than 20 percent or more than one hundred dollars a month shall constitute a material change of circumstances sufficient to petition the court for modification of child

support in accordance with the family-support chart after appropriate deductions. Ark. Code Ann. § 9-14-107(a)(1) (Repl. 2020).[1] In determining whether there has been a change in circumstances warranting a modification of support, the circuit court "should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart." *Cathey v. Altazan*, 2023 Ark. App. 314, at 10–11, 669 S.W.3d 614, 620 (holding increase in income by both parties along with an increase in expenses for the parties' children constituted a material changes of circumstances warranting modification of child support).

Here, White's basis for modifying child support was that his income had decreased by more than 20 percent. At trial, the exact percentage amount of White's decreased income was disputed. His testimony was that his income decreased by 22 percent, yet he also presented the court with several proposed child-support worksheets that showed a range of possible income reduction from 28 percent to 15 percent.

Additionally, change in income and financial conditions of the parties was the only factor on which evidence was presented. There was no change in custody; White was still contributing to a college fund, indicating his financial conditions under the existing order

---

[1]This statutory provision was amended in 2021 and removed the one-hundred-dollar-a-month language, but the order in the present case was issued in 2020, prior to the amendment.

are not strained, regardless of the current support amount; and he did not state that he was unable to meet his current and future obligations or that he had significant debt. Instead, White took a job that allowed him to work fewer hours. Neither this court nor the circuit court faults White for seeking a schedule that allows him more time for his children or other pursuits, especially when he is still capable of meeting his existing obligations.

White compares his case to *Maner v. Maner*, 2021 Ark. App. 472, at 4–5, 639 S.W.3d 368, 371, where we reversed a lower court's denial of the father's petition to reduce child support when he experienced around a 15 percent reduction in income. In *Maner*, appellant's monthly income decreased from $62,484 to $53,468. The lower court, noting that it used the maximum chart amount of $30,000 a month combined income, determined that the presumed child-support order would be $2341. However, it found there was not a material change in circumstances and kept the current obligation at $7000 a month—a $4600 difference. We also noted that the order did not state that the court had considered additional factors, such as the fact that the parties' combined gross incomes exceeded the maximum level of chart support; that the appellant had remarried and has three children with his new wife whom he is also supporting; or the fact that his two older sons have 529 education trusts that contained $120,000 and $114,000 at the time of the hearing. Given this, we held it was clearly erroneous to find that the father's change in income was not a material change in circumstances.

White's reliance on *Maner* is not compelling. Here, even though White's decrease in income was comparable to the appellant in *Maner*, the disparity between what White pays

versus what the current chart suggests is not as significant. White's current monthly child-support obligation is $2,625.35, and he argues it should be reduced between $1,272.07 and $1,536.89. This little over $1000 difference is relatively minor compared to the $4600 disparity in *Maner*. Further, we do not have evidence of additional factors as were presented in *Maner*.

White also contends that the court erred in dismissing his motion because the court's order did not include written findings stating why the chart amount is unjust or inappropriate.

> Supreme Court Administrative Order No. 10 requires
>
> [a]ll orders granting or modifying child support shall contain the court's determination of the payor's income, payee's income, recite the amount of support required under these Guidelines, and state whether the court deviated from the presumptive child-support calculation set by the Worksheet and these Guidelines. If an order deviates from the Guidelines amount, then the order must explain the reason(s) for the deviation.

*In re Implementation of Revised Admin. Ord. No. 10*, 2020 Ark. 131 (per curiam). Here, there was no modification and thus no deviation that warranted an explanation.

Last, he argues the court erred in failing to modify support where Merrigan admitted she did not need the amount she was receiving. However, it was the circuit court's discretion to weigh this factor as it did. Given the lifestyle to which the children were accustomed, it was not clearly erroneous for the circuit court to leave child support untouched on the basis of what Merrigan was capable of affording. To the extent White asks us to consider Merrigan's income as it relates to his child support, that is contrary to our caselaw. *See Parnell*

*v. Ark. Dep't of Fin. & Admin., Off. of Child Support Enf't*, 2022 Ark. 52, 639 S.W.3d 865 (child support should focus on the child's needs, not the custodial parent's).

Overall, the court's ultimate decision to maintain the same level of support was well within its informed discretion. There is no requirement or directive that the court must modify the existing child-support obligation, even where a change in the payor's income meets, or even exceeds, the threshold requirement of the statute. *See Bishop v. Bishop*, 98 Ark. App. 111, 250 S.W.3d 570 (2007) (explaining that meeting the minimum requirements of a change of income set forth in the statute simply entitles a party to file a petition with the court requesting a modification of its child-support obligation).

## II. *Alimony*

Next, White argues the court erred in failing to modify alimony when evidence supported the fact that Merrigan did not need alimony and that her needs were more than met.

The purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case. *Nauman v. Nauman*, 2023 Ark. App. 41, at 9–10, 660 S.W.3d 598, 604–05. The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.*

The parties' agreement concerning alimony specifically stated that the payment is modifiable if there is a change of circumstances by either party. While the agreement

presented circumstances when payment may cease, the document did not define what change in circumstances might be sufficient to amend the payment.

Here, evidence established that Merrigan's income increased by approximately 6 percent, and her expenses have remained the same. The circuit court explicitly found that she still has a need for that support "to maintain the accustomed lifestyle for herself and the children while they are in her physical control," and that finding is supported on this record. Merrigan currently receives $1083 monthly. The parties contracted for this amount less than three years ago, and it will terminate in three more. As we concluded in our child-support analysis, White is still capable of meeting his obligations, even with his reduced income. In light of our standard of review, the discretionary nature of alimony awards, and the evidence before the circuit court, we are not left with a definite and firm conviction that the circuit court made a mistake.

Affirmed.

BARRETT and BROWN, JJ., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups* and *Jordan Snoderly*, for appellant.

*Tim Cullen*, for appellant.